

Wells Fargo Home Mortgage
Mac F2302-03J
1 Home Campus
Des Moines, IA 50328

March 18, 2019

STRAFFI & STRAFFI, LLC
DANIEL E. STRAFFI
670 COMMONS WAY

TOMS RIVER, NJ 08755

Subject: Action required regarding your client's Home Preservation review
         Case number:  1831573
         Mortgagor(s): Craig Trautweiler
                       Shawn Trautweiler
         Loan number:  0005716812

Dear STRAFFI & STRAFFI, LLC:
     DANIEL E. STRAFFI :

I have enclosed a copy of correspondence that must be passed along to
your client which provides time-sensitive information about a Home
Preservation review on their property.

Next steps required:
Please review the attached document with your client and have them comply
with any timeframes referenced within the correspondence.

I'm here to help:
As your client's home preservation specialist, I'm standing by to help
with your client's needs. If you have any questions about the
information in this letter, you can reach me at the phone number listed
below.

Sincerely,

HEATHER COFFMAN
Home Preservation Specialist
Phone: 1-855-716-0537 ext. 1335427122
Fax: 1-800-590-8910

Enclosure

BK077/K27/Pg1



Wells Fargo Home Mortgage
Mac F2302·03J
1 Home Campus
Des Moines, IA 50328

March 18, 2019

STRAFFI & STRAFFI, LLC
DANIEL E. STRAFFI
670 COMMONS WAY
TOMS RIVER, NJ 08755

Subject: Action required regarding your client's mortgage
        Case number: 1831573
        Mortgagor(s): Craig Trautweiler
                      Shawn Trautweiler
        Mortgage account number: 0005716812

Dear STRAFFI & STRAFFI, LLC
     DANIEL E. STRAFFI

Enclosed is a copy of correspondence that must be passed along to your
client(s) which provides time-sensitive information about your client's
mortgage.

Next steps required
        (x) Please review the attached document with your client(s)
            and return the signed and dated copy of the documents within
            the referenced timeframes.
        ( ) Please obtain court consent with the enclosed copy of the
            modification documents.

We're here to help you
I'm available to help with you or your client's needs. If you need
additional assistance, please contact me at the phone number listed
below.

Sincerely,

HEATHER COFFMAN
Home Preservation Specialist
Wells Fargo Home Mortgage
Ph: 1-855-716-0537
Ext: 1335427122
Fax: 866-590-8910

BK074/K27

Wells Fargo Home Mortgage is a division of Wells Fargo Bank, N.A. NMLSR ID 399801



03/18/2019

| | Account Information |
|---|---|
| | **Online:** yourwellsfargomortgage.com |
| | **Fax:** 1 (866) 359-7363 |
| | **Telephone:** 1 (800) 416-1472 |
| | **Correspondence:** PO Box 10335 |
| | Des Moines, IA  50306 |
| | **Hours of Operation:** Monday - Friday, 8:00 a.m. - 5:00 p.m. Central Time |

**CRAIG TRAUTWEILER**
**SHAWN TRAUTWEILER**
**604 PRINCETON AVENUE**
**BRICK TWP, NJ 08724**

**Loan Number:** (scan barcode)
**Property Address: 604 PRINCETON AVENUE,
BRICK TWP, NJ 08724**

Dear **CRAIG TRAUTWEILER and SHAWN TRAUTWEILER,**

**Subject**: Your Loan Modification Agreement.

**Congratulations!** Enclosed is your Loan Modification Agreement (Agreement). This Agreement will reflect the terms of your modified mortgage. It is important to note that your original documents are being modified and are not being refinanced into a new loan. Please read this letter so that you understand all the steps you need to take to complete your modification of your mortgage loan.

PLEASE NOTE: This notice is being provided for informational purposes only. As a result of at least one bankruptcy case filing that included the above referenced account, Wells Fargo Home Mortgage is NOT attempting in any way to violate any provision of the United States Bankruptcy Code or to collect a debt (deficiency or otherwise) from any customer(s) who is impacted by an active bankruptcy case or has received a discharge, where the account was not otherwise reaffirmed or excepted from discharge. THIS IS NOT A BILL OR A REQUEST FOR PAYMENT AS TO THESE CUSTOMER(S). Your decision to discuss workout options with Wells Fargo Home Mortgage is strictly voluntary. You are not obligated to pursue any workout options discussed with us. At your request, we will immediately terminate any such discussions should you no longer wish to pursue these options.

**What you need to know:**

**1. What you need to know about Borrower Representations**
This section confirms you're experiencing a hardship along with other important information about your home and current loan which you provided to us. This was used to help you qualify for a loan modification. In addition this section explains that the new terms of your loan modification do not apply until you've signed the Agreement and we have signed it as well. A copy of the Agreement signed by you and by us will be provided to you.

---



**2. What you need to know about The Modification**
This section outlines the terms of your loan modification, and identifies what will change on your mortgage loan. You will see your outstanding balance, interest bearing principal, unpaid balance, deferred interest, fees, monthly mortgage payment and the maturity date.

**3. Your loan Modification Terms**
This section details the changes you will see to the terms of your loan. Changes may include your contractual due date and extended maturity date. Please review this section to understand all of the changes to your modified loan.

**What you need to do next:** To complete your modification, you will need to sign and return the following documents along with the payment, if required, by **April 1, 2019** in the enclosed, prepaid overnight envelope.

- One signed and dated copy of the Agreement. Keep the other copy for your records.
- Notice of Special Flood Hazard Area (SFHA), if enclosed.

  Wells Fargo Home Mortgage
  1000 Blue Gentian Road
  Suite 300
  MAC X9999-01N
  Eagan, MN 55121

If you do not sign and return all of the above-referenced documents, by **April 1, 2019** and you still wish to be considered for a modification, you must contact us immediately.

**Important information:**

- All mortgagors need to sign their name exactly as it is printed on the documents in blue or black ink.
- If one of the mortgagors listed should not be required to sign the documents OR has a different name than what is listed on the documents, please provide the appropriate documentation that supports this change. Acceptable documents may include a death certificate, divorce decree along with a recorded Quit Claim Deed, or marriage certificate.
- If all pages of the above documents and payment, if required, are not received or if you have not contacted us by **April 1, 2019**, we will conclude that you are no longer interested in modifying your existing loan and will cancel your request for a modification. Until we receive the signed and completed documents, we are unable to complete the modification; we will continue to service your mortgage loan – which may include continued collections communications via telephone calls and/or letters and any legal proceedings.



**Details of your loan modification Agreement:**

1. Due date of first payment: **May 1, 2019**
2. New principal balance: **$370,107.15**
3. Deferred balance: **$102,508.51**
4. New principal and interest monthly payment amount: **$1,203.02**
5. Escrowed real estate taxes monthly amount: **$593.73**
6. Escrowed property insurance monthly amount: **$255.33**
7. Escrowed shortage monthly amount: **$94.10**
8. Total monthly escrow payment: **$943.16**
9. Total modified monthly payment: **$2,146.18**
   This payment amount includes principal, interest, and if applicable, escrow and escrow shortage amounts.
10. New maturity date: **April 1, 2059**
11. New interest rate: **4.500%**

I look forward to hearing from you by **April 1, 2019**, and if you have any questions please call me at the phone number in the account information box at the top of the letter.

Sincerely,

**HEATHER COFFMAN**
Home Preservation Specialist
855-716-0537 ext. 1335427122
Wells Fargo Home Mortgage

Wells Fargo Home Mortgage is a division of Wells Fargo Bank, N.A. © 2018 Wells Fargo Bank, N.A. All rights reserved. NMLSR ID 399801



| SUMMARY | Here is a summary of your modified mortgage. |
| --- | --- |

**New Principal Balance.** Any past due amounts as of the end of the trial period, including unpaid interest, real estate taxes, property insurance premiums, and certain assessments paid on your behalf to a third party, will be added to your mortgage loan balance. **If you fulfill the terms of this agreement at the time of modification, we will waive all late charges that have accrued and remain unpaid.**

**Unpaid Principal Balance.** Current Unpaid Principal Balance of your loan remaining as of **03/14/2019**. The Unpaid Principal Balance does not include unpaid interest, real estate taxes, insurance premiums, or assessments paid on your behalf to a third party. **If you fulfill the terms of this agreement at the time of modification, the Unpaid Principal Balance will be replaced with the New Principal Balance.**

**Interest Rate.** The interest rate on your modified loan will be adjusted as noted in the attached Loan Modification Agreement.

**Term Extension.** To reduce your mortgage payment, we may extend the term of your mortgage. This means we may spread your payments over a longer period.

**Deferral of Principal.** To further reduce your mortgage payment, we will defer collection of and not collect interest on **$102,508.51** of your outstanding principal. You will not be required to make monthly payments on that portion. This portion of principal will be due when you pay off the modified loan, which may be when you sell or transfer an interest in your house, refinance the loan, or when the last scheduled payment is due.

**Escrow Account.** The terms of your Agreement require the servicer to set aside a portion of your new monthly payment in an escrow account for payment of your real estate taxes, property insurance premiums, and other required fees. Upon acceptance of the offer, any prior waiver of escrows by your lender is no longer in effect. Wells Fargo Home Mortgage will draw on this account to pay your real estate taxes and property insurance premiums, as they come due. Please note after your modification is complete, your escrow payment amount will adjust at least annually if your real estate taxes, property insurance premiums and/or assessment amounts change, so the amount of your monthly payment that Wells Fargo Home Mortgage must place in escrow will adjust as permitted by law. This means that your monthly payment may change. Your initial monthly escrow payment will be **$943.16**, which contains the separate escrowed amounts listed above. This amount is included in the loan payment noted in Section 2 of the enclosed modification Agreement; you do not need to remit this amount separately.

**Escrow Shortage.** Due to the timing of your real estate tax and property insurance payments, we have determined that there is a shortage of funds in your escrow account in the amount of **$5,646.27**. You may pay this amount over a 5-year (60 months) period. This additional **$94.10** a month has already been included in the monthly escrow payment stated above and in the loan payment noted in Section 2 of the enclosed modification Agreement.

**Change To Biweekly Payment Loans.** If the Loan is a biweekly loan, through the enclosed Agreement, the Loan will convert to a monthly payment schedule. References in the Loan Documents to "biweekly," "every two weeks," and "every other Monday" shall be read as "monthly," except as it relates to the Modified Maturity Date. Interest will be charged on a 360-day year, divided into twelve (12) segments. Interest charged at all other times will be computed by multiplying the unpaid principal by the interest rate, dividing the result by 365, and then multiplying that daily interest amount by the actual number of days for which interest is then due.





# What you need to know about signing this agreement

*Use this checklist with the notary, who must be present when you sign the documents. Your modification will close sooner if you complete your documents correctly.*

## Customers (borrowers)

☐ Review all the documents enclosed, including the Loan Modification Agreement, affidavits, and all related documents ("documents"). These may also need your notarized signature.

☐ Work with a notary, who must be present when you complete, sign, and date the documents.

☐ Use blue or black ink.

☐ Make sure that all signatures match the printed names.

☐ Write in the date where indicated.

☐ If you or another borrower needs to correct a signature or date that you wrote by mistake, draw a line through the error and write in the correction clearly. Then initial the correction.

☐ Your state may require witnesses to sign these documents. If this is the case, they must neatly print their names below their original signatures.

**Note:** *The notary can be a witness, except in the state of Louisiana. If the notary is a witness, he or she must sign in both the Witness and the Borrower Acknowledgement sections.*

## Notary

☐ Review the documents to be completed and notarized.

**Note:** *Each set of documents includes the Loan Modification Agreement, affidavits, and all related documents ("documents"). The customer must sign the agreement along with any affidavits or related documents, if they're enclosed.*

☐ Use blue or black ink.

☐ Don't print the customer's driver's license or other identification document numbers on the documents.

☐ Both you and the customer must sign where indicated and on the same date. Please also write the month, day, and year.

☐ If you need to correct a signature or date that you wrote by mistake, draw a line through the error and write in the correction clearly. Then initial the correction.

☐ Place the stamp and your signature within the document margins. Place the stamp below the Borrower Acknowledgement section on the Acknowledgment page.

**Note:** *We will fill out the Lender Acknowledgement section. Do not notarize the Lender Acknowledgement section.*

☐ Make sure that the stamp and all other information is legible.

☐ Do not cover any written information with the stamp or your signature.

☐ Complete the state and county.

☐ Print your name under your signature in the Acknowledgement section. When you notarize the Borrower Acknowledgement section, provide the date your commission expires.

☐ Also print your name after the "before me" paragraph in the Acknowledgement sections. In different states, this might say "acknowledged before me" with a blank line, "by the undersigned," or other variations.



**You can contact your home preservation specialist if you have any questions along the way.**

**Call us at the number listed on the cover letter.**

Wells Fargo Home Mortgage is a division of Wells Fargo Bank, N.A. © 2018 Wells Fargo Bank, N.A. All rights reserved. NMLSR ID 399801

Loan Modification Agreement - Signing Instructions

50792MU 04/18

After recording please return to:
SERVICELINK
LOAN MODIFICATION SOLUTIONS
3220 EL CAMINO REAL
IRVINE, CA  75001

Prepared by:
WELLS FARGO BANK, N.A
KATHERINE WEBB
1 HOME CAMPUS, MAC# F2302-03J
DES MOINES, IA  50328
800-416-1472

Tax/Parcel #:  BLOCK:  926  LOT: 29

——————————————————— *[Space Above This Line For Recording Data]* ———————————————————

Original Principal Amount $340,000.00          Investor Loan No: 1698005964
Unpaid Principal Amount $326,594.77          Loan No: (scan barcode)
New Principal Amount $370,107.15
Total Cap Amount $43,512.38

# Loan Modification Agreement

Executed on this day: **March 14, 2019**
Borrower ("I"):[1]  **CRAIG TRAUTWEILER AND SHAWN TRAUTWEILER**
Borrower Mailing Address: **604 PRINCETON AVENUE, BRICK TWP, NJ  08724**
Lender or Servicer ("Lender"):  **WELLS FARGO BANK, N.A.**
Lender or Servicer Address: **1 HOME CAMPUS, MAC# F2302-03J, DES MOINES, IA  50328** Date
of first lien mortgage, deed of trust, or security deed ("Mortgage") **February 8, 2005** and Note
("Note"): **February 8, 2005**
Property Address ("Property"): **604 PRINCETON AVENUE, BRICK TWP, NJ 08724**

Legal Description:
**SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF:**

———————————————

[1] If there is more than one Borrower or Mortgagor executing this document, each is referred to as "I."  For purposes of this document
words signifying the singular (such as "I" or "my") shall include the plural (such as "we" or "our") and vice versa where appropriate.

———————————————————————————————————————————————————————

Loan Modification Agreement                    Page 1 of 12                    20275NJ  06/16 Rev. 09/17



Mortgage made by **CRAIG TRAUTWEILER, SHAWN TRAUTWEILER, HUSBAND AND WIFE** to **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR WACHOVIA MORTGAGE CORPORATION, ITS SUCCESSORS AND ASSIGNS** for **$340,000.00** and interest, dated **February 8, 2005** and recorded on **February 24, 2005** in **Instrument No.CRFN 2005037145BOOK 12493 PAGE 1323** of the Official Records of **OCEAN** County, **NEW JERSEY**

This Loan Modification Agreement ("Agreement") is made on **March 14, 2019** by and between Borrower, as obligor(s), or as title holder(s) to the Property, as the context may require, and Lender. Borrower's obligations under the Note are secured by a properly recorded Mortgage, dated the same date as the Note encumbering the Property.  Borrower agrees that, except as expressly modified in this Agreement, the Note and the Mortgage remain in full force and effect and are valid, binding obligations upon Borrower, except as discharged in Bankruptcy, and are properly secured by the Property.

If my representations in Section 1, Borrower Representations, continue to be true in all material respects, then this Agreement will amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage.  The Mortgage and Note together, as they may previously have been amended, are hereafter referred to as the "Loan Documents."  Capitalized terms used in this Agreement and not defined have the meaning given to them in the Loan Documents.

In consideration of the covenants hereinafter set forth and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, it is agreed as follows (notwithstanding anything to the contrary in the Loan Documents).

I understand that after I sign and return two copies of this Agreement to the Lender, the Lender will send me a signed copy of this Agreement.

Nothing in this Agreement shall be understood or construed to be a satisfaction or release, in whole or in part of the Borrower's obligations under the Loan Documents.  Further, except as otherwise specifically provided in this Agreement, the Loan Documents will remain unchanged, and Borrower and Lender will be bound by, and shall comply with, all of the terms and provisions thereof, as amended by this Agreement:

**1.    Borrower Representations**.

I certify, represent to Lender and agree:

A.   I am experiencing a financial hardship, and as a result, (i) I am in default under the Loan Documents, and/or (ii) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future, I did not intentionally or purposefully default of the Mortgage Loan in order to obtain a loan modification;

B.   Under penalty of perjury, all documents and information I have provided to Lender in connection with this Agreement, including the documents and information regarding my eligibility for the modification, are true and correct;

C.   If Lender requires me to obtain credit counseling in connection with the modification, I will do so;

D.   I have made or will make all payments required within this modification process;

---



E.  In consideration of the covenants hereinafter set forth and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged by the Parties, it is agreed as follows (notwithstanding anything to the contrary in the Loan Documents).

F.  Borrower filed for relief under Chapter **13** of the United States Bankruptcy Code on **October 30, 2018**.

G.  This Agreement is only valid once consent of the United States Bankruptcy Court or other applicable approval to modify this mortgage is received.

H.  Prior to filing for relief under the United States Bankruptcy Code, Borrower agreed to repay the above referenced loan pursuant to the Loan Documents between Lender and Borrower.  Such Agreement granted Lender a valid security interest and an enforceable lien on the property securing the loan.

I.  Notwithstanding anything to the contrary contained in this Agreement, Borrower acknowledges that Lender retains certain rights, including but not limited to the right to foreclose its lien evidenced by the Loan Documents under appropriate circumstances. Borrower and Lender agree that the consideration for this Agreement is Lender's forbearance from presently exercising its rights and pursuing its remedies under the Loan Documents as a result of Borrower's default thereunder.  Nothing in this Agreement shall be construed to be an attempt to collect against Borrower personally or an attempt to revive personal liability.

J.  Borrower desires to retain the Property securing the Note, and acknowledges that Lender's security interest and lien are still valid and enforceable.

K.  Borrower acknowledges and understands that he/she is not obligated to enter into this Agreement, and that he/she is entering into this Agreement at Borrower's request, voluntarily and with no coercion or pressure from Lender, for the sole purpose of retaining the Property.

2.  **The Modification**.

A.  The modified principal balance of the Note will include all amounts and arrearages that will be past due as of the Modification Effective Date (which may include unpaid and deferred interest, fees, escrow advances and other costs, but excluding unpaid late charges, valuation, property preservation, and other charges not permitted under the terms of this modification, collectively, "Unpaid Amounts") less any amounts paid to the Lender but not previously credited to the modified loan.  The new principal balance of my Note will be **$370,107.15** (the "New Principal Balance").  Borrower understands that by agreeing to add the Unpaid Amounts to the principal balance, the added Unpaid Amounts accrue interest based on the interest rate in effect under this Agreement.  Borrower also understands that this means interest will now accrue on the unpaid interest that is added to the outstanding principal balance, which would not happen without this Agreement.



B.  **$102,508.51** of the New Principal Balance shall be deferred (the "Deferred Balance") and will be treated as a non-interest bearing principal forbearance.  I will not pay interest or make monthly payments on the Deferred Balance.  The New Principal Balance less the Deferred Balance shall be referred to as the "Interest Bearing Principal Balance" and this amount is **$267,598.64**.  Interest at the rate of **4.500%** will begin to accrue on the Interest Bearing Principal Balance as of **April 1, 2019** and the first new monthly payment on the Interest Bearing Principal Balance will be due on **May 1, 2019**.  Interest due on each monthly payment will be calculated by multiplying the Interest Bearing Principal Balance and the interest rate in effect at the time of calculation and dividing the result by twelve (12).  My payment schedule for the modified Loan is as follows:

| Months | Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment | Monthly Escrow Payment Amount* | Total Monthly Payment* | Payment Begins On |
|---|---|---|---|---|---|---|
| 480 | 4.500% | 04/01/2019 | $1,203.02 | $943.16 | $2,146.18 | 05/01/2019 |

**\*This includes an escrow shortage amount to be paid over the first 60 month term.  After your modification is complete, escrow payments adjust at least annually in accordance with applicable law; therefore, the total monthly payment may change accordingly.**

The above terms shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable, step or simple interest rate.

Borrower agrees to pay in full the Deferred Balance and any other amounts still owed under the Loan Documents by the earliest of: (i) the date an interest in the Property is sold or transferred, (ii) the date on which the entire Interest Bearing Principal Balance is paid off, or (iii) the Maturity Date.

Borrower agrees that any partial prepayments of Principal may be applied at Lender's discretion first to any Deferred Balance before applying such partial prepayment to other amounts due.

**Notice to Borrower:**  The Deferred Balance will result in a lump sum payment due at the time of loan maturity or earlier upon payoff of the loan.  If the Borrower does not have the funds to pay the lump sum payment when it comes due, the Borrower may have to obtain a new loan against your property.  In that case, the Borrower may have to pay commissions, fees, and expenses for the arranging of the new loan.  In addition, if the Borrower is unable to make the monthly payments or the lump sum payment, the Borrower may lose the property and all equity through foreclosure.  Keep this in mind in deciding upon this modification.  The lump sum payment on this loan is due **April 1, 2059** or upon earlier payoff of the loan.

3.  **Loan Modification Terms.**

This Agreement hereby modifies the following terms of the Loan Documents as described herein above as follows:

A.  The current contractual due date has been changed from **September 1, 2017** to **May 1, 2019**.  The first modified contractual due date is **May 1, 2019**.

B.  The maturity date is **April 1, 2059**.



C. The amount of Recoverable Expenses* to be capitalized will be U.S. **$2,397.00**.

*Recoverable Expenses may include, but are not limited to: Title, Attorney fees/costs, BPO/Appraisal, and/or Property Preservation/Property Inspections.

D. Lender will forgive outstanding Other Fees U.S. **$0.00**. Other Fees may include, but are not limited to: Prior Deferred Interest, appraisal fees.

E. Lender will forgive outstanding NSF Fees U.S. **$0.00**.

F. Lender agrees to waive all unpaid Late Charges in the amount of U.S. **$300.76**.

G. The amount of interest to be included (capitalized) will be U.S. **$24,291.24**.

H. The amount of the Escrow Advance to be capitalized will be U.S. **$16,824.14**.

**4. Additional Agreements.**

I agree to the following:

A. If applicable, the Note may contain provisions allowing for changes in the interest rate and the monthly payment. The Note limits the amount the Borrower's interest rate can change at any one time and the maximum rate the Borrowers must pay.

B. If a biweekly loan, the Loan will convert to a monthly payment schedule. References in the Loan Documents to "biweekly," "every two weeks," and "every other Monday" shall be read as "monthly," except as it relates to the Modified Maturity Date. Interest will be charged on a 360-day year, divided into twelve (12) segments. Interest charged at all other times will be computed by multiplying the interest bearing principal balance by the interest rate, dividing the result by 365, and then multiplying that daily interest amount by the actual number of days for which interest is then due. As part of the conversion from biweekly to monthly payments, any automatic withdrawal of payments (auto drafting) in effect with Lender for the Loan are cancelled.

C. **Funds for Escrow Items.** I will pay to Lender on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Loan Documents; (d) mortgage insurance premiums, if any, or any sums payable to Lender in lieu of the payment of mortgage insurance premiums in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments that Lender requires to be escrowed. These items are called "Escrow Items." I shall promptly furnish to Lender all notices of amounts to be paid under this Section 4.E. I shall pay Lender the Funds for Escrow Items unless Lender waives my obligation to pay the Funds for any or all Escrow Items. Lender may waive my obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, I shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. My obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and Agreement



contained in the Loan Documents, as the phrase "covenant and Agreement" is used in the Loan Documents. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may exercise its rights under the Loan Documents and this Agreement and pay such amount and I shall then be obligated to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents, and, upon such revocation, I shall pay to Lender all Funds, and in such amounts, that are then required under this Section 4.E.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge me for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays me interest on the Funds and applicable law permits Lender to make such a charge. Unless an Agreement is made in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay me any interest or earnings on the Funds. Lender and I can agree in writing, however, that interest shall be paid on the Funds. Lender shall provide me, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to me for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by the Loan Documents, Lender shall promptly refund to me any Funds held by Lender.

D. That the mortgage insurance premiums on the loan, if applicable, may increase as a result of the modification of the loan which may result in a higher total monthly payment. Furthermore, the cancellation date, termination date, or final termination of the private mortgage insurance may be recalculated to reflect the modified terms and conditions of the loan.

E. If the Borrowers balance has been reduced as a result of this new Agreement, it is understood that any credit life, accident and health, and involuntary unemployment insurance written in connection with this loan has been cancelled, and that any refund of unearned premiums or charges made because of the cancellation of such credit insurance is reflected in the amount due under this Agreement. ***Exception:*** In the state of California, Life, A&H, and IUI insurance <u>must</u> be cancelled, with refunds applied to the account prior to entry of the settlement transaction, even though there is no reduction in balance as part of the settlement.



F.  If this loan has "Monthly Add-On Premium" Credit Life or Credit Accident & Health Insurance coverage, it is understood and agreed that the Borrowers acceptance of this Agreement will result in the cancellation of the above-mentioned insurances.

G.  If the Borrower's home owners insurance should lapse, Wells Fargo Home Mortgage reserves the right to place Lender Placed Insurance (LPI) on the account.  If LPI is placed on the account the monthly payment could increase.  All other terms of the modification Agreement will not be affected by the LPI and will remain in effect with accordance to this Agreement.

H.  If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Loan Documents.  If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Loan Documents.  If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Loan Documents without further notice or demand on Borrower.

I.  If Borrower has a pay option adjustable rate mortgage Loan, upon modification, the minimum monthly payment option, the interest-only or any other payment options will no longer be offered and that the monthly payments described in the above payment schedule for my modified Loan will be the minimum payment that will be due each month for the remaining term of the Loan.

J.  If included, the undersigned Borrower(s) acknowledge receipt and acceptance of the 1-4 Family Modification Agreement Rider Assignment of Rents.

K.  If included, the undersigned Borrower(s) acknowledge receipt and acceptance of the Notice of Special Flood Hazard disclosure.

L.  CORRECTION AGREEMENT:  The undersigned Borrower(s), for and in consideration of the approval, closing and funding of this Modification, hereby grants Wells Fargo Home Mortgage, as lender, limited power of attorney to correct and/or initial all typographical or clerical errors discovered in the Modification Agreement required to be signed. In the event this limited power of attorney is exercised, the undersigned will be notified and receive a copy of the document executed or initialed on their behalf.  This provision may not be used to modify the interest rate, modify the term, modify the outstanding principal balance or modify the undersigned's monthly principal and interest payments as modified by this Agreement. Any of these specified changes must be executed directly by the undersigned.  This limited power of attorney shall automatically terminate in 180 days from the closing date of the undersigned's Modification, or the date any and all documents that the lender requires to be recorded have been successfully recorded at the appropriate office, whichever is later.  Borrower agrees to make and execute such other documents or papers as necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to their heirs, executors, administrators, and assigns of the Borrower.

M.  If the Borrower's Loan is currently in foreclosure, the Lender will attempt to suspend or cancel the foreclosure action upon receipt of the first payment according to this Agreement.  Lender agrees to suspend further collection efforts as long as Borrowers continue making the required payments under this Agreement.



N. All the rights and remedies, stipulations, and conditions contained in the Loan Documents relating to default in the making of payments under the Loan Documents shall also apply to default in the making of the modified payments hereunder.

O. This Agreement shall supersede the terms of any modification, forbearance, trial period plan or other mortgage assistance that the Borrower previously entered into with Lender.

P. In cases where the Loan has been registered with Mortgagee who has only legal title to the interests granted by the Borrower in the Loan Documents, Mortgagee has the right to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property and to take any action required of Lender including, but not limited to, releasing and canceling the Loan.

Q. If the Loan Documents govern a home equity loan or line of credit, then Borrower agrees that as of the Modification Effective Date, the right to borrow new funds under the home equity loan or line of credit is terminated. This means that Borrower cannot obtain additional advances and must make payments according to this Agreement. Lender may have previously terminated or suspended the right to obtain additional advances under the home equity loan or line of credit, and if so, Borrower confirms and acknowledges that no additional advances may be obtained.

R. Unless this Agreement is executed without alteration and is signed and returned along with the following documents with the payment, if required, within 15 days from the date of this letter in the enclosed, prepaid overnight envelope, it will be of no force or effect and the Loan will remain subject to all existing terms and conditions provided in the Loan Documents. Upon receipt of a properly executed Agreement, this Agreement will become effective on **April 1, 2019**.

S. I agree that this Agreement will be null and void if the Lender is unable to receive all necessary title endorsement(s), title insurance product(s) and/ or subordination Agreement(s).

T. Borrower authorizes Lender, and Lender's successors and assigns, to share Borrower information including, but not limited to (i) name, address, and telephone number, (ii) Social Security Number, (iii) credit score, (iv) income, (v) payment history, (vi) account balances and activity, including information about my modification or foreclosure relief programs, with Third Parties that can assist Lender and Borrower in obtaining a foreclosure prevention alternative, or otherwise provide support services related to Borrower's loan. For purposes of this section, Third Parties include a counseling agency, state or local Housing Finance Agency or similar entity, any insurer, guarantor, or servicer that insures, guarantees, or services Borrower's loan or any other mortgage loan secured by the Property on which Borrower is obligated, or to any companies that perform support services to them in connection with Borrower's loan.

U. Borrower consents to being contacted by Lender or Third Parties concerning mortgage assistance relating to Borrower's loan including the trial period plan to modify Borrower's loan, at any telephone number, including mobile telephone number, or email address Borrower has provided to Lender or Third Parties.

By checking this box, Borrower also consents to being contacted by text messaging. ☐

V. Borrower must deliver to Wells Fargo Home Mortgage a properly signed modification Agreement by **April 1, 2019**. If Borrower does not return a properly signed modification Agreement by this date and make all payments pursuant to the trial plan Agreement or any other required pre-modification payments, Wells Fargo Home Mortgage may deny or cancel the modification. If the

Borrower returns properly signed modification Agreement by said date, payments pursuant to the loan modification Agreement are due as outlined in this modification Agreement. Wells Fargo Home Mortgage may deny or cancel this loan modification Agreement if Borrower fails to make the first payment due pursuant to this loan modification Agreement.

**All Borrowers are required to sign and date this Agreement in blue or black ink only as the Borrowers' name appears below.  If signed using any other color or method, the document will not be accepted and another copy of the Agreement will be sent to the Borrower to be signed.**

**By signing below, all Borrowers certify they have read this Agreement in its entirety, that all Borrowers know and understand the meaning and intent of this Agreement and that all Borrowers enter into this Agreement knowingly and voluntarily.  By signing below, all Borrowers agree to all terms and conditions described on every page of this Agreement.**

_____ (Seal)    3/26/19
Borrower: **CRAIG TRAUTWEILER**                Date

_____ (Seal)    3/26/19
Borrower: **SHAWN TRAUTWEILER**                Date

_____ *[Space Below This Line For Acknowledgment in Accordance with Laws of Jurisdiction]* _____

## ACKNOWLEDGMENT

State of _NJ_                              §
                                          §
County of _Ocean_                         §

On this _26ᵗʰ_ day of _March_ , _2019_ , before me _Jennifer A. Mitchell_ , Notary Public, personally appeared **CRAIG TRAUTWEILER AND SHAWN TRAUTWEILER**, known or identified to me (or satisfactorily proven), to be the person whose name(s) is/are subscribed to the within instrument, and acknowledged that he (or they) executed the same as his own act for the purposes therein contained.

In witness whereof I hereunto set my hand and official seal.

_Jennifer A. Mitchell_
Signature of Officer

_Jennifer A. Mitchell_
Printed Name

Title of Officer

(Seal)                           My Commission Expires: _4/16/23_

JENNIFER A. MITCHELL
NOTARY PUBLIC OF NEW JERSEY
MY COMMISSION EXPIRES 04/16/2023
STATE OF NEW JERSEY NOTARY PUBLIC

---



ACCEPTED AND AGREED TO BY THE OWNER AND HOLDER OF SAID NOTE
**WELLS FARGO BANK, N.A.**

By: _____

                                    -Lender

_____

Date of Lender's Signature


## ACKNOWLEDGMENT

State of _____           §
                               §
County of _____          §

   This instrument was acknowledged before me on _____ by

as                                    of **WELLS FARGO BANK, N.A.**.

                     _____

                     Signature of Notarial Officer

                     _____

                     Printed Name

                     _____

                     Title or Rank

                     Serial Number, if any: _____

(Seal)               My Commission Expires: _____

**EXHIBIT A**

**BORROWER(S): CRAIG TRAUTWEILER AND SHAWN TRAUTWEILER**

**LOAN NUMBER: (scan barcode)**

**LEGAL DESCRIPTION:**

STATE OF NEW JERSEY, COUNTY OF OCEAN, BRICK TOWNSHIP, AND DESCRIBED AS FOLLOWS:

ALL THAT CERTAIN LOT, PIECE OR PARCEL OF LAND, WITH THE BUILDINGS AND IMPROVEMENTS THEREON ERECTED, SITUATE, LYING AND BEING IN THE TOWNSHIP OF BRICK, COUNTY OF OCEAN, STATE OF NEW JERSEY:

BEING KNOWN AND DESIGNATED AS LOT 29 IN BLOCK 926 ON THE TAX MAP OF THE TOWNSHIP OF BRICK. (FOR INFORMATION ONLY)

BEING ALSO KNOWN AND DESIGNATED AS LOT 29 AS SHOWN ON A CERTAIN MAP ENTITLED, "METEDECONK, MAP B, PROPERTY OF THE METEDOCONK COMPANY", SAID MOP BEING DULY FILED IN THE OCEAN COUNTY CLERK'S OFFICE ON JULY 6, 1923 AS MAP NO. D-217.

BEGINNING AT A POINT IN THE NORTHERLY SIDELINE OF PRINCETON AVENUE (50 FOOT RIGHT OF WAY) DISTANT 300.00 FEET WESTERLY THEREIN FROM ITS INTERSECTION WITH THE WESTERLY SIDELINE OF FOURTH STREET (50 FOOT RIGHT OF WAY) AND RUNNING; THENCE

(1) ALONG THE NORTHERLY SIDELINE OF PRINCETON AVENUE, NORTH 82 DEGREES 55 MINUTES 00 SECONDS WEST, 50.00 FEET TO A POINT; THENCE

(2) NORTH 04 DEGREES 10 MINUTES 00 SECONDS WEST, 125.00 FEET TO A POINT; THENCE

(3) SOUTH 82 DEGREES 55 MINUTES 00 SECONDS EAST, 50.00 FEET TO A POINT; THENCE

(4) SOUTH 04 DEGREES 10 MINUTES 00 SECONDS EAST, 125.00 FEET TO THE POINT AND PLACE OF BEGINNING.

THE ABOVE DESCRIPTION IS DRAWN IN ACCORDANCE WITH A SURVEY PREPARED BY MORGAN ENGINEERING AND SURVEYING, INC. DATED APRIL 16, 1997.

BEING THE SAME PREMISES CONVEYED TO MICHAEL A. PETRIELLO AND BARBARA R. PETRIELLO, HIS WIFE BY DEED FROM GARDEN STATE BANK DATED 10/27/92, RECORDED 11/13/92, IN DEED BOOK 5020, PAGE 329.

Parcel ID Number: BLOCK: 926 LOT: 29
ALSO KNOWN AS: 604 PRINCETON AVENUE, BRICK TWP, NJ 08724



Date:                  **March 14, 2019**
Loan Number:       **(scan barcode)**
Lender:            **WELLS FARGO BANK, N.A.**

Borrower(s):       **CRAIG TRAUTWEILER AND SHAWN TRAUTWEILER**
Property Address:  **604 PRINCETON AVENUE, BRICK TWP, NJ 08724**

# NOTICE OF NO ORAL AGREEMENTS

**THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO ORAL AGREEMENTS BETWEEN THE PARTIES.**

**Receipt of Notice.** The undersigned herby admit to having each received and read a copy of this Notice on or before execution of the Loan Agreement. "Loan Agreement" means one or more promises, promissory notes, agreements, undertakings, security agreements, deeds of trust or other documents, or commitments or any combination of those actions or documents, pursuant to which a financial institution loans or delays repayment of or agrees to loan or delay repayment of money, goods or any other thing of value or to otherwise extend credit or make a financial accommodation.

_____ 3/26/19    _____ 3/26/19
**CRAIG TRAUTWEILER** (Borrower) (Date)   **SHAWN TRAUTWEILER** (Borrower) (Date)


_____         _____
(Borrower) (Date)              (Borrower) (Date)



| | |
|---|---|
| Date: | **March 14, 2019** |
| Loan Number: | **(scan barcode)** |
| Lender: | **WELLS FARGO BANK, N.A.** |
| Borrower(s): | **CRAIG TRAUTWEILER AND SHAWN TRAUTWEILER** |
| Property Address: | **604 PRINCETON AVENUE, BRICK TWP, NJ 08724** |

# ERRORS AND OMISSION COMPLIANCE AGREEMENT

In consideration of. **WELLS FARGO BANK, N.A.**
(the "Lender") agreeing to modify the referenced loan (the "Loan") to the Borrower, the Borrower agrees that if requested by the Lender, the Borrower will correct, or cooperate in the correction of, any clerical errors made in any document or agreement entered into in connection with the modification of the Loan, if deemed necessary or desirable in the reasonable discretion of the Lender, to enable Lender to sell, convey, seek guaranty or market the Loan to any entity, including without limitation, the Federal National Mortgage Association, the Federal Home Loan Mortgage Corporation, the Government National Mortgage Association, the Federal Housing Authority, the Department of Veterans Affairs or any municipal bond authority.

The Borrower agrees to comply with all such requests made by the Lender within 30 days of receipt of written request from the Lender.

The Borrower makes this agreement in order to assure that the documents and agreements executed in connection with the modification of the Loan will conform to and be acceptable in the marketplace in the event the Loan is transferred, conveyed, guaranteed or marketed by the Lender.

| | |
|---|---|
| _Craig Trautweiler_    3/26/19 | _Shawn Trautweiler_ 3/26/19 |
| **CRAIG TRAUTWEILER**   (Borrower) (Date) | **SHAWN TRAUTWEILER**   (Borrower) (Date) |

| | |
|---|---|
| (Borrower) (Date) | (Borrower) (Date) |



# Preferred Payment Plan<sup>SM</sup> Enrollment Form



*Match your mortgage payments to your payday cycle*

Managing your mortgage payments is easy when you enroll in the **Preferred Payment Plan**. Simply choose the option on the next page that matches your personal payday cycle, and your monthly payments will be withdrawn automatically from your checking or savings[1] account. The **Preferred Payment Plan** is free, secure and more convenient than writing checks and mailing payments.

***Please note: Enrolling in the Preferred Payment Plan does not change the principal and interest payment arrangement specified in your mortgage loan documents. Withdrawn funds may be applied to your mortgage when sufficient funds have accumulated to make a full monthly payment as outlined in your mortgage note.***

## Preferred Payment Plan Terms and Conditions

You must agree to the terms and conditions below by completing and signing the form located on the following page:

- I authorize Wells Fargo, its authorized representatives, and service providers to initiate electronic withdrawals from my designated account to make payments on my mortgage.
- I understand that I will receive confirmation specifying the date the electronic withdrawals will begin. I understand that I will continue to make my payment until I receive this confirmation and electronic withdrawals begin.
- I understand that this authorization and the program services in no way alter or lessen my obligation under my existing mortgage contract regarding the amount of payments, when payments are due, the applications of payments, the assessment of late charges or the determination of delinquencies. I must maintain sufficient funds in my account for withdrawal of my payment amount.
- I understand that withdrawn funds may not be applied to my mortgage until sufficient funds have accumulated for a full payment to be made.
- I understand the electronic withdrawal amount will vary with changes in escrow or principal and interest components, if applicable.
- I understand that I must provide Wells Fargo notice of at least 3 business days for any requests to modify, change or terminate participation in this program. I understand that if I modify, change, or terminate participation in the program, I may not realize the benefits.
- I agree to be bound by the program's Terms and Conditions, which are stated here and online.

1. Excess Activity Fees may apply if you exceed these federally-mandated transaction limits for savings accounts: Three withdrawals in a month by check, draft, point-of-sale purchase, check card, or other similar withdrawal payable to a third party. A total of six transfers and/or withdrawals in a month including: those listed above, pre-authorized or automatic transfers (including overdraft protection transfers and payment to third parties), and transfers made online or by telephone. For more information, please refer to your account agreement with your financial institution.



To enroll in the Preferred Payment Plan, follow the steps below and fax this signed form to 1-866-287-6241, or mail it to Wells Fargo Home Mortgage, PO Box 10335, Des Moines, Iowa 50306. This plan is one of many options you may choose to make your mortgage payments. This is not a required program.

## 1. Select the Preferred Payment Plan option that matches your pay schedule

Check the appropriate box to mark your choice. If this form is signed, but no option is checked, you will be set up for monthly withdrawals on your due date.

*Note: If you choose the weekly or every-other-week option, withdrawals in addition to the amount needed to cover your monthly mortgage payments will naturally occur 2 to 5 times per year. The additional withdrawn funds will be automatically applied to your principal balance – helping you pay of your mortgage faster.*

☐ **Weekly:** One-quarter of your monthly payment is withdrawn every week, including principal, interest, applicable tax and insurance payments. In a year's time, 52 withdrawals will be made.
*Request a withdrawal start date (must be Mon.-Fri. and 4 weeks prior to due date):*

☐ **Bi-weekly (every other week):** Half of your monthly payment amount will be withdrawn every other week, including principal, interest, applicable tax and insurance payments. In a year's time, 26 withdrawals will be made.
*Request a withdrawal start date (must be Mon.-Fri. and 3 weeks prior to due date):*

☐ **Semi-Monthly (twice a month):** Half of your monthly payment will be withdrawn on the 15th of the month prior to the due date, and the second half of your monthly payment will be withdrawn on the 1st of month in which the payment is due. Each withdrawal will equal one-half of the total monthly payment due, including principal, interest, applicable tax and insurance payments. In a year's time, 24 withdrawals will be made.

☐ **Monthly:** Your monthly payment amount will be withdrawn on your due date (usually the 1st day of every month) or up to 4 days after your due date. The withdrawal amount will equal the total monthly payment due, including principal, interest, applicable tax and insurance payments. ☐ Due date ☐ 1 day after ☐ 2 days after ☐ 3 days after ☐ 4 days after

## 2. Specify additional principal to be withdrawn (optional)

You can choose to add an additional amount to each electronic withdrawal to be applied to your outstanding loan principal.

Yes, please add $_____to each of my automatic electronic withdrawals.

## 3. Supply your account information (do not include voided check)

Account type: ☐ Checking    ☐ Savings

Customer bank routing number: _____    Customer bank account number: _____
(9-digit number at the bottom left of your check)    (To the right of the bank routing number on your check)

## 4. Signature

By signing below, I agree to the Terms and Conditions on the preceding page and online at wellsfargo.com/preferred terms.

Customer name (print): _____    Customer phone number: _____

Customer loan number: _____    Property address: _____

Customer signature: _____    Date signed: _____

NOTE: A newly signed form is required if the Preferred Payment Plan is not set-up within 120 days of initial signing of the form.

1. Excess Activity Fees may apply if you exceed these federally-mandated transaction limits for savings accounts: Three withdrawals in a month by check, draft, point-of-sale purchase, check card, or other similar withdrawal payable to a third party. A total of six transfers and/or withdrawals in a month including: those listed above, pre-authorized or automatic transfers (including overdraft protection transfers and payment to third parties), and transfers made online or by telephone.

 Wells Fargo Home Mortgage is a division of Wells Fargo Bank, N.A.
© 2018 Wells Fargo Bank, N.A. All rights reserved. NMLSR ID 399801

For more information, please refer to your account agreement with your financial institution

After recording please return to:
SERVICELINK
LOAN MODIFICATION SOLUTIONS
3220 EL CAMINO REAL
IRVINE, CA  75001

Prepared by:
WELLS FARGO BANK, N.A
KATHERINE WEBB
1 HOME CAMPUS, MAC# F2302-03J
DES MOINES, IA  50328
800-416-1472

Tax/Parcel #:  BLOCK:  926  LOT: 29
———————————— *[Space Above This Line For Recording Data]* ————————————
Original Principal Amount $340,000.00          Investor Loan No: 1698005964
Unpaid Principal Amount $326,594.77           Loan No: (scan barcode)
New Principal Amount $370,107.15
Total Cap Amount $43,512.38

# Loan Modification Agreement

Executed on this day: **March 14, 2019**
Borrower ("I"):[1] **CRAIG TRAUTWEILER AND SHAWN TRAUTWEILER**
Borrower Mailing Address: **604 PRINCETON AVENUE, BRICK TWP, NJ 08724**
Lender or Servicer ("Lender"): **WELLS FARGO BANK, N.A.**
Lender or Servicer Address: 1 HOME CAMPUS, MAC# F2302-03J, DES MOINES, IA  50328 Date
of first lien mortgage, deed of trust, or security deed ("Mortgage") **February 8, 2005** and Note
("Note"): **February 8, 2005**
Property Address ("Property"): **604 PRINCETON AVENUE, BRICK TWP, NJ 08724**

Legal Description:
**SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF:**

---

[1] If there is more than one Borrower or Mortgagor executing this document, each is referred to as "I." For purposes of this document
words signifying the singular (such as "I" or "my") shall include the plural (such as "we" or "our") and vice versa where appropriate.

Mortgage made by **CRAIG TRAUTWEILER, SHAWN TRAUTWEILER, HUSBAND AND WIFE** to **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR WACHOVIA MORTGAGE CORPORATION, ITS SUCCESSORS AND ASSIGNS** for **$340,000.00** and interest, dated **February 8, 2005** and recorded on **February 24, 2005** in **Instrument No.CRFN 2005037145BOOK 12493 PAGE 1323** of the Official Records of **OCEAN** County, **NEW JERSEY**

This Loan Modification Agreement ("Agreement") is made on **March 14, 2019** by and between Borrower, as obligor(s), or as title holder(s) to the Property, as the context may require, and Lender. Borrower's obligations under the Note are secured by a properly recorded Mortgage, dated the same date as the Note encumbering the Property.  Borrower agrees that, except as expressly modified in this Agreement, the Note and the Mortgage remain in full force and effect and are valid, binding obligations upon Borrower, except as discharged in Bankruptcy, and are properly secured by the Property.

If my representations in Section 1, Borrower Representations, continue to be true in all material respects, then this Agreement will amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage.  The Mortgage and Note together, as they may previously have been amended, are hereafter referred to as the "Loan Documents."  Capitalized terms used in this Agreement and not defined have the meaning given to them in the Loan Documents.

In consideration of the covenants hereinafter set forth and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, it is agreed as follows (notwithstanding anything to the contrary in the Loan Documents).

I understand that after I sign and return two copies of this Agreement to the Lender, the Lender will send me a signed copy of this Agreement.

Nothing in this Agreement shall be understood or construed to be a satisfaction or release, in whole or in part of the Borrower's obligations under the Loan Documents.  Further, except as otherwise specifically provided in this Agreement, the Loan Documents will remain unchanged, and Borrower and Lender will be bound by, and shall comply with, all of the terms and provisions thereof, as amended by this Agreement:

1. **Borrower Representations**.

I certify, represent to Lender and agree:

    A. I am experiencing a financial hardship, and as a result, (i) I am in default under the Loan Documents, and/or (ii) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future, I did not intentionally or purposefully default of the Mortgage Loan in order to obtain a loan modification;

    B. Under penalty of perjury, all documents and information I have provided to Lender in connection with this Agreement, including the documents and information regarding my eligibility for the modification, are true and correct;

    C. If Lender requires me to obtain credit counseling in connection with the modification, I will do so;

    D. I have made or will make all payments required within this modification process;

E. In consideration of the covenants hereinafter set forth and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged by the Parties, it is agreed as follows (notwithstanding anything to the contrary in the Loan Documents).

F. Borrower filed for relief under Chapter **13** of the United States Bankruptcy Code on **October 30, 2018**.

G. This Agreement is only valid once consent of the United States Bankruptcy Court or other applicable approval to modify this mortgage is received.

H. Prior to filing for relief under the United States Bankruptcy Code, Borrower agreed to repay the above referenced loan pursuant to the Loan Documents between Lender and Borrower. Such Agreement granted Lender a valid security interest and an enforceable lien on the property securing the loan.

I. Notwithstanding anything to the contrary contained in this Agreement, Borrower acknowledges that Lender retains certain rights, including but not limited to the right to foreclose its lien evidenced by the Loan Documents under appropriate circumstances. Borrower and Lender agree that the consideration for this Agreement is Lender's forbearance from presently exercising its rights and pursuing its remedies under the Loan Documents as a result of Borrower's default thereunder. Nothing in this Agreement shall be construed to be an attempt to collect against Borrower personally or an attempt to revive personal liability.

J. Borrower desires to retain the Property securing the Note, and acknowledges that Lender's security interest and lien are still valid and enforceable.

K. Borrower acknowledges and understands that he/she is not obligated to enter into this Agreement, and that he/she is entering into this Agreement at Borrower's request, voluntarily and with no coercion or pressure from Lender, for the sole purpose of retaining the Property.

2. **The Modification**.

A. The modified principal balance of the Note will include all amounts and arrearages that will be past due as of the Modification Effective Date (which may include unpaid and deferred interest, fees, escrow advances and other costs, but excluding unpaid late charges, valuation, property preservation, and other charges not permitted under the terms of this modification, collectively, "Unpaid Amounts") less any amounts paid to the Lender but not previously credited to the modified loan. The new principal balance of my Note will be **$370,107.15** (the "New Principal Balance"). Borrower understands that by agreeing to add the Unpaid Amounts to the principal balance, the added Unpaid Amounts accrue interest based on the interest rate in effect under this Agreement. Borrower also understands that this means interest will now accrue on the unpaid interest that is added to the outstanding principal balance, which would not happen without this Agreement.

B. **$102,508.51** of the New Principal Balance shall be deferred (the "Deferred Balance") and will be treated as a non-interest bearing principal forbearance. I will not pay interest or make monthly payments on the Deferred Balance. The New Principal Balance less the Deferred Balance shall be referred to as the "Interest Bearing Principal Balance" and this amount is **$267,598.64**. Interest at the rate of **4.500%** will begin to accrue on the Interest Bearing Principal Balance as of **April 1, 2019** and the first new monthly payment on the Interest Bearing Principal Balance will be due on **May 1, 2019**. Interest due on each monthly payment will be calculated by multiplying the Interest Bearing Principal Balance and the interest rate in effect at the time of calculation and dividing the result by twelve (12). My payment schedule for the modified Loan is as follows:

| Months | Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment | Monthly Escrow Payment Amount* | Total Monthly Payment* | Payment Begins On |
|--------|---------------|---------------------------|----------------------------------------|--------------------------------|------------------------|-------------------|
| 480 | 4.500% | 04/01/2019 | $1,203.02 | $943.16 | $2,146.18 | 05/01/2019 |

**\*This includes an escrow shortage amount to be paid over the first 60 month term. After your modification is complete, escrow payments adjust at least annually in accordance with applicable law; therefore, the total monthly payment may change accordingly.**

The above terms shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable, step or simple interest rate.

Borrower agrees to pay in full the Deferred Balance and any other amounts still owed under the Loan Documents by the earliest of: (i) the date an interest in the Property is sold or transferred, (ii) the date on which the entire Interest Bearing Principal Balance is paid off, or (iii) the Maturity Date.

Borrower agrees that any partial prepayments of Principal may be applied at Lender's discretion first to any Deferred Balance before applying such partial prepayment to other amounts due.

**Notice to Borrower:**  The Deferred Balance will result in a lump sum payment due at the time of loan maturity or earlier upon payoff of the loan. If the Borrower does not have the funds to pay the lump sum payment when it comes due, the Borrower may have to obtain a new loan against your property. In that case, the Borrower may have to pay commissions, fees, and expenses for the arranging of the new loan. In addition, if the Borrower is unable to make the monthly payments or the lump sum payment, the Borrower may lose the property and all equity through foreclosure. Keep this in mind in deciding upon this modification. The lump sum payment on this loan is due **April 1, 2059** or upon earlier payoff of the loan.

## 3.  Loan Modification Terms.

This Agreement hereby modifies the following terms of the Loan Documents as described herein above as follows:

A. The current contractual due date has been changed from **September 1, 2017** to **May 1, 2019**. The first modified contractual due date is **May 1, 2019**.

B. The maturity date is **April 1, 2059**.



C. The amount of Recoverable Expenses* to be capitalized will be U.S. **$2,397.00**.

*Recoverable Expenses may include, but are not limited to: Title, Attorney fees/costs, BPO/Appraisal, and/or Property Preservation/Property Inspections.

D. Lender will forgive outstanding Other Fees U.S. **$0.00**. Other Fees may include, but are not limited to: Prior Deferred Interest, appraisal fees.

E. Lender will forgive outstanding NSF Fees U.S. **$0.00**.

F. Lender agrees to waive all unpaid Late Charges in the amount of U.S. **$300.76**.

G. The amount of interest to be included (capitalized) will be U.S. **$24,291.24**.

H. The amount of the Escrow Advance to be capitalized will be U.S. **$16,824.14**.

## 4. Additional Agreements.

I agree to the following:

A. If applicable, the Note may contain provisions allowing for changes in the interest rate and the monthly payment. The Note limits the amount the Borrower's interest rate can change at any one time and the maximum rate the Borrowers must pay.

B. If a biweekly loan, the Loan will convert to a monthly payment schedule. References in the Loan Documents to "biweekly," "every two weeks," and "every other Monday" shall be read as "monthly," except as it relates to the Modified Maturity Date. Interest will be charged on a 360-day year, divided into twelve (12) segments. Interest charged at all other times will be computed by multiplying the interest bearing principal balance by the interest rate, dividing the result by 365, and then multiplying that daily interest amount by the actual number of days for which interest is then due. As part of the conversion from biweekly to monthly payments, any automatic withdrawal of payments (auto drafting) in effect with Lender for the Loan are cancelled.

C. **Funds for Escrow Items.** I will pay to Lender on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Loan Documents; (d) mortgage insurance premiums, if any, or any sums payable to Lender in lieu of the payment of mortgage insurance premiums in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments that Lender requires to be escrowed. These items are called "Escrow Items." I shall promptly furnish to Lender all notices of amounts to be paid under this Section 4.E. I shall pay Lender the Funds for Escrow Items unless Lender waives my obligation to pay the Funds for any or all Escrow Items. Lender may waive my obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, I shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. My obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and Agreement



contained in the Loan Documents, as the phrase "covenant and Agreement" is used in the Loan Documents. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may exercise its rights under the Loan Documents and this Agreement and pay such amount and I shall then be obligated to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents, and, upon such revocation, I shall pay to Lender all Funds, and in such amounts, that are then required under this Section 4.E.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge me for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays me interest on the Funds and applicable law permits Lender to make such a charge. Unless an Agreement is made in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay me any interest or earnings on the Funds. Lender and I can agree in writing, however, that interest shall be paid on the Funds. Lender shall provide me, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to me for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by the Loan Documents, Lender shall promptly refund to me any Funds held by Lender.

D. That the mortgage insurance premiums on the loan, if applicable, may increase as a result of the modification of the loan which may result in a higher total monthly payment. Furthermore, the cancellation date, termination date, or final termination of the private mortgage insurance may be recalculated to reflect the modified terms and conditions of the loan.

E. If the Borrowers balance has been reduced as a result of this new Agreement, it is understood that any credit life, accident and health, and involuntary unemployment insurance written in connection with this loan has been cancelled, and that any refund of unearned premiums or charges made because of the cancellation of such credit insurance is reflected in the amount due under this Agreement. ***Exception:*** In the state of California, Life, A&H, and IUI insurance <u>must</u> be cancelled, with refunds applied to the account prior to entry of the settlement transaction, even though there is no reduction in balance as part of the settlement.



F. If this loan has "Monthly Add-On Premium" Credit Life or Credit Accident & Health Insurance coverage, it is understood and agreed that the Borrowers acceptance of this Agreement will result in the cancellation of the above-mentioned insurances.

G. If the Borrower's home owners insurance should lapse, Wells Fargo Home Mortgage reserves the right to place Lender Placed Insurance (LPI) on the account. If LPI is placed on the account the monthly payment could increase. All other terms of the modification Agreement will not be affected by the LPI and will remain in effect with accordance to this Agreement.

H. If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Loan Documents. If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Loan Documents. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Loan Documents without further notice or demand on Borrower.

I. If Borrower has a pay option adjustable rate mortgage Loan, upon modification, the minimum monthly payment option, the interest-only or any other payment options will no longer be offered and that the monthly payments described in the above payment schedule for my modified Loan will be the minimum payment that will be due each month for the remaining term of the Loan.

J. If included, the undersigned Borrower(s) acknowledge receipt and acceptance of the 1-4 Family Modification Agreement Rider Assignment of Rents.

K. If included, the undersigned Borrower(s) acknowledge receipt and acceptance of the Notice of Special Flood Hazard disclosure.

L. CORRECTION AGREEMENT:  The undersigned Borrower(s), for and in consideration of the approval, closing and funding of this Modification, hereby grants Wells Fargo Home Mortgage, as lender, limited power of attorney to correct and/or initial all typographical or clerical errors discovered in the Modification Agreement required to be signed. In the event this limited power of attorney is exercised, the undersigned will be notified and receive a copy of the document executed or initialed on their behalf. This provision may not be used to modify the interest rate, modify the term, modify the outstanding principal balance or modify the undersigned's monthly principal and interest payments as modified by this Agreement. Any of these specified changes must be executed directly by the undersigned. This limited power of attorney shall automatically terminate in 180 days from the closing date of the undersigned's Modification, or the date any and all documents that the lender requires to be recorded have been successfully recorded at the appropriate office, whichever is later.  Borrower agrees to make and execute such other documents or papers as necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to their heirs, executors, administrators, and assigns of the Borrower.

M. If the Borrower's Loan is currently in foreclosure, the Lender will attempt to suspend or cancel the foreclosure action upon receipt of the first payment according to this Agreement. Lender agrees to suspend further collection efforts as long as Borrowers continue making the required payments under this Agreement.

---



N. All the rights and remedies, stipulations, and conditions contained in the Loan Documents relating to default in the making of payments under the Loan Documents shall also apply to default in the making of the modified payments hereunder.

O. This Agreement shall supersede the terms of any modification, forbearance, trial period plan or other mortgage assistance that the Borrower previously entered into with Lender.

P. In cases where the Loan has been registered with Mortgagee who has only legal title to the interests granted by the Borrower in the Loan Documents, Mortgagee has the right to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property and to take any action required of Lender including, but not limited to, releasing and canceling the Loan.

Q. If the Loan Documents govern a home equity loan or line of credit, then Borrower agrees that as of the Modification Effective Date, the right to borrow new funds under the home equity loan or line of credit is terminated. This means that Borrower cannot obtain additional advances and must make payments according to this Agreement. Lender may have previously terminated or suspended the right to obtain additional advances under the home equity loan or line of credit, and if so, Borrower confirms and acknowledges that no additional advances may be obtained.

R. Unless this Agreement is executed without alteration and is signed and returned along with the following documents with the payment, if required, within 15 days from the date of this letter in the enclosed, prepaid overnight envelope, it will be of no force or effect and the Loan will remain subject to all existing terms and conditions provided in the Loan Documents. Upon receipt of a properly executed Agreement, this Agreement will become effective on **April 1, 2019**.

S. I agree that this Agreement will be null and void if the Lender is unable to receive all necessary title endorsement(s), title insurance product(s) and/ or subordination Agreement(s).

T. Borrower authorizes Lender, and Lender's successors and assigns, to share Borrower information including, but not limited to (i) name, address, and telephone number, (ii) Social Security Number, (iii) credit score, (iv) income, (v) payment history, (vi) account balances and activity, including information about my modification or foreclosure relief programs, with Third Parties that can assist Lender and Borrower in obtaining a foreclosure prevention alternative, or otherwise provide support services related to Borrower's loan. For purposes of this section, Third Parties include a counseling agency, state or local Housing Finance Agency or similar entity, any insurer, guarantor, or servicer that insures, guarantees, or services Borrower's loan or any other mortgage loan secured by the Property on which Borrower is obligated, or to any companies that perform support services to them in connection with Borrower's loan.

U. Borrower consents to being contacted by Lender or Third Parties concerning mortgage assistance relating to Borrower's loan including the trial period plan to modify Borrower's loan, at any telephone number, including mobile telephone number, or email address Borrower has provided to Lender or Third Parties.

By checking this box, Borrower also consents to being contacted by text messaging. ☐

V. Borrower must deliver to Wells Fargo Home Mortgage a properly signed modification Agreement by **April 1, 2019**. If Borrower does not return a properly signed modification Agreement by this date and make all payments pursuant to the trial plan Agreement or any other required pre-modification payments, Wells Fargo Home Mortgage may deny or cancel the modification. If the

Borrower returns properly signed modification Agreement by said date, payments pursuant to the loan modification Agreement are due as outlined in this modification Agreement. Wells Fargo Home Mortgage may deny or cancel this loan modification Agreement if Borrower fails to make the first payment due pursuant to this loan modification Agreement.

**All Borrowers are required to sign and date this Agreement in blue or black ink only as the Borrowers' name appears below. If signed using any other color or method, the document will not be accepted and another copy of the Agreement will be sent to the Borrower to be signed.**

**By signing below, all Borrowers certify they have read this Agreement in its entirety, that all Borrowers know and understand the meaning and intent of this Agreement and that all Borrowers enter into this Agreement knowingly and voluntarily. By signing below, all Borrowers agree to all terms and conditions described on every page of this Agreement.**

_____ (Seal)    3/26/2019
Borrower: CRAIG TRAUTWEILER                Date

_____ (Seal)    3/26/2019
Borrower: SHAWN TRAUTWEILER                Date

_____ *[Space Below This Line For Acknowledgment in Accordance with Laws of Jurisdiction]* _____

Loan Modification Agreement                    Page 9 of 12                    20275NJ  06/16 Rev. 09/17



**ACKNOWLEDGMENT**

State of _____ NJ _____

§

County of _____ Ocean _____

§

§

On this _____ 26 _____ day of _____ March _____, _____ 2017 _____, before me _____ Jennifer A. Mitchell _____, Notary Public, personally appeared **CRAIG TRAUTWEILER AND SHAWN TRAUTWEILER**, known or identified to me (or satisfactorily proven), to be the person whose name(s) is/are subscribed to the within instrument, and acknowledged that he (or they) executed the same as his own act for the purposes therein contained.

In witness whereof I hereunto set my hand and official seal.



_____
Signature of Officer

Jennifer A. Mitchell
_____
Printed Name

_____
Title of Officer

My Commission Expires: 4/16/23

(Seal)

**JENNIFER A. MITCHELL**
**NOTARY PUBLIC OF NEW JERSEY**
**MY COMMISSION EXPIRES 04/16/2023**

---

Loan Modification Agreement                    Page 10 of 12                    20275NJ 06/16 Rev. 09/17



ACCEPTED AND AGREED TO BY THE OWNER AND HOLDER OF SAID NOTE
**WELLS FARGO BANK, N.A.**

By: _____
_____-Lender

_____
Date of Lender's Signature

### ACKNOWLEDGMENT

State of _____                §
                                     §
County of _____               §

    This instrument was acknowledged before me on _____ by

as                                          of **WELLS FARGO BANK, N.A.**.

_____
Signature of Notarial Officer

_____
Printed Name

_____
Title or Rank

Serial Number, if any: _____

(Seal)                      My Commission Expires: _____



EXHIBIT A

BORROWER(S): CRAIG TRAUTWEILER AND SHAWN TRAUTWEILER

LOAN NUMBER: (scan barcode)

LEGAL DESCRIPTION:

STATE OF NEW JERSEY, COUNTY OF OCEAN, BRICK TOWNSHIP, AND DESCRIBED AS FOLLOWS:

ALL THAT CERTAIN LOT, PIECE OR PARCEL OF LAND, WITH THE BUILDINGS AND IMPROVEMENTS THEREON ERECTED, SITUATE, LYING AND BEING IN THE TOWNSHIP OF BRICK, COUNTY OF OCEAN, STATE OF NEW JERSEY:

BEING KNOWN AND DESIGNATED AS LOT 29 IN BLOCK 926 ON THE TAX MAP OF THE TOWNSHIP OF BRICK. (FOR INFORMATION ONLY)

BEING ALSO KNOWN AND DESIGNATED AS LOT 29 AS SHOWN ON A CERTAIN MAP ENTITLED, "METEDECONK, MAP B, PROPERTY OF THE METEDOCONK COMPANY", SAID MOP BEING DULY FILED IN THE OCEAN COUNTY CLERK'S OFFICE ON JULY 6, 1923 AS MAP NO. D-217.

BEGINNING AT A POINT IN THE NORTHERLY SIDELINE OF PRINCETON AVENUE (50 FOOT RIGHT OF WAY) DISTANT 300.00 FEET WESTERLY THEREIN FROM ITS INTERSECTION WITH THE WESTERLY SIDELINE OF FOURTH STREET (50 FOOT RIGHT OF WAY) AND RUNNING; THENCE

(1) ALONG THE NORTHERLY SIDELINE OF PRINCETON AVENUE, NORTH 82 DEGREES 55 MINUTES 00 SECONDS WEST, 50.00 FEET TO A POINT; THENCE

(2) NORTH 04 DEGREES 10 MINUTES 00 SECONDS WEST, 125.00 FEET TO A POINT; THENCE

(3) SOUTH 82 DEGREES 55 MINUTES 00 SECONDS EAST, 50.00 FEET TO A POINT; THENCE

(4) SOUTH 04 DEGREES 10 MINUTES 00 SECONDS EAST, 125.00 FEET TO THE POINT AND PLACE OF BEGINNING.

THE ABOVE DESCRIPTION IS DRAWN IN ACCORDANCE WITH A SURVEY PREPARED BY MORGAN ENGINEERING AND SURVEYING, INC. DATED APRIL 16, 1997.

BEING THE SAME PREMISES CONVEYED TO MICHAEL A. PETRIELLO AND BARBARA R. PETRIELLO, HIS WIFE BY DEED FROM GARDEN STATE BANK DATED 10/27/92, RECORDED 11/13/92, IN DEED BOOK 5020, PAGE 329.

Parcel ID Number: BLOCK: 926 LOT: 29
ALSO KNOWN AS: 604 PRINCETON AVENUE, BRICK TWP, NJ 08724



Date:                    March 14, 2019
Loan Number:             (scan barcode)
Lender:                  WELLS FARGO BANK, N.A.

Borrower(s):             CRAIG TRAUTWEILER AND SHAWN TRAUTWEILER
Property Address:        604 PRINCETON AVENUE, BRICK TWP, NJ 08724

# NOTICE OF NO ORAL AGREEMENTS

**THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.  THERE ARE NO ORAL AGREEMENTS BETWEEN THE PARTIES.**

**Receipt of Notice**.  The undersigned herby admit to having each received and read a copy of this Notice on or before execution of the Loan Agreement.  "Loan Agreement" means one or more promises, promissory notes, agreements, undertakings, security agreements, deeds of trust or other documents, or commitments or any combination of those actions or documents, pursuant to which a financial institution loans or delays repayment of or agrees to loan or delay repayment of money, goods or any other thing of value or to otherwise extend credit or make a financial accommodation.

_____  3/26/19        _____ 3/26/19
CRAIG TRAUTWEILER    (Borrower) (Date)    SHAWN TRAUTWEILER    (Borrower) (Date)

_____                  _____
            (Borrower) (Date)                        (Borrower) (Date)



| | |
|---|---|
| Date: | **March 14, 2019** |
| Loan Number: | **(scan barcode)** |
| Lender: | **WELLS FARGO BANK, N.A.** |
| Borrower(s): | **CRAIG TRAUTWEILER AND SHAWN TRAUTWEILER** |
| Property Address: | **604 PRINCETON AVENUE, BRICK TWP, NJ 08724** |

# ERRORS AND OMISSION COMPLIANCE AGREEMENT

In consideration of. **WELLS FARGO BANK, N.A.**
(the "Lender") agreeing to modify the referenced loan (the "Loan") to the Borrower, the Borrower agrees that if requested by the Lender, the Borrower will correct, or cooperate in the correction of, any clerical errors made in any document or agreement entered into in connection with the modification of the Loan, if deemed necessary or desirable in the reasonable discretion of the Lender, to enable Lender to sell, convey, seek guaranty or market the Loan to any entity, including without limitation, the Federal National Mortgage Association, the Federal Home Loan Mortgage Corporation, the Government National Mortgage Association, the Federal Housing Authority, the Department of Veterans Affairs or any municipal bond authority.

The Borrower agrees to comply with all such requests made by the Lender within 30 days of receipt of written request from the Lender.

The Borrower makes this agreement in order to assure that the documents and agreements executed in connection with the modification of the Loan will conform to and be acceptable in the marketplace in the event the Loan is transferred, conveyed, guaranteed or marketed by the Lender.

| | |
|---|---|
| _Craig Trautweiler_ 3/26/19 | _Shawn Trautweiler_ 3/26/19 |
| **CRAIG TRAUTWEILER**    (Borrower) (Date) | **SHAWN TRAUTWEILER**    (Borrower) (Date) |
| _____ | _____ |
| (Borrower) (Date) | (Borrower) (Date) |



# Preferred Payment Plan[SM]
# Enrollment Form



*Match your mortgage payments to your payday cycle*

Managing your mortgage payments is easy when you enroll in the **Preferred Payment Plan**. Simply choose the option on the next page that matches your personal payday cycle, and your monthly payments will be withdrawn automatically from your checking or savings[1] account. The **Preferred Payment Plan** is free, secure and more convenient than writing checks and mailing payments.

*Please note: Enrolling in the Preferred Payment Plan does not change the principal and interest payment arrangement specified in your mortgage loan documents. Withdrawn funds may be applied to your mortgage when sufficient funds have accumulated to make a full monthly payment as outlined in your mortgage note.*

### Preferred Payment Plan Terms and Conditions

You must agree to the terms and conditions below by completing and signing the form located on the following page:

- I authorize Wells Fargo, its authorized representatives, and service providers to initiate electronic withdrawals from my designated account to make payments on my mortgage.
- I understand that I will receive confirmation specifying the date the electronic withdrawals will begin. I understand that I will continue to make my payment until I receive this confirmation and electronic withdrawals begin.
- I understand that this authorization and the program services in no way alter or lessen my obligation under my existing mortgage contract regarding the amount of payments, when payments are due, the applications of payments, the assessment of late charges or the determination of delinquencies. I must maintain sufficient funds in my account for withdrawal of my payment amount.
- I understand that withdrawn funds may not be applied to my mortgage until sufficient funds have accumulated for a full payment to be made.
- I understand the electronic withdrawal amount will vary with changes in escrow or principal and interest components, if applicable.
- I understand that I must provide Wells Fargo notice of at least 3 business days for any requests to modify, change or terminate participation in this program. I understand that if I modify, change, or terminate participation in the program, I may not realize the benefits.
- I agree to be bound by the program's Terms and Conditions, which are stated here and online.

1. Excess Activity Fees may apply if you exceed these federally-mandated transaction limits for savings accounts: Three withdrawals in a month by check, draft, point-of-sale purchase, check card, or other similar withdrawal payable to a third party. A total of six transfers and/or withdrawals in a month including: those listed above, pre-authorized or automatic transfers (including overdraft protection transfers and payment to third parties), and transfers made online or by telephone. For more information, please refer to your account agreement with your financial institution.



To enroll in the Preferred Payment Plan, follow the steps below and fax this signed form to 1-866-287-6241, or mail it to Wells Fargo Home Mortgage, PO Box 10335, Des Moines, Iowa 50306. This plan is one of many options you may choose to make your mortgage payments. This is not a required program.

## 1. Select the Preferred Payment Plan option that matches your pay schedule

Check the appropriate box to mark your choice. If this form is signed, but no option is checked, you will be set up for monthly withdrawals on your due date.
*Note: If you choose the weekly or every-other-week option, withdrawals in addition to the amount needed to cover your monthly mortgage payments will naturally occur 2 to 5 times per year. The additional withdrawn funds will be automatically applied to your principal balance – helping you pay of your mortgage faster.*

- [ ] **Weekly:** One-quarter of your monthly payment is withdrawn every week, including principal, interest, applicable tax and insurance payments. In a year's time, 52 withdrawals will be made.
  *Request a withdrawal start date (must be Mon.-Fri. and 4 weeks prior to due date):*

- [ ] **Bi-weekly (every other week):** Half of your monthly payment amount will be withdrawn every other week, including principal, interest, applicable tax and insurance payments. In a year's time, 26 withdrawals will be made.
  *Request a withdrawal start date (must be Mon.-Fri. and 3 weeks prior to due date):*

- [ ] **Semi-Monthly (twice a month):** Half of your monthly payment will be withdrawn on the 15th of the month prior to the due date, and the second half of your monthly payment will be withdrawn on the 1st of month in which the payment is due. Each withdrawal will equal one-half of the total monthly payment due, including principal, interest, applicable tax and insurance payments. In a year's time, 24 withdrawals will be made.

- [ ] **Monthly:** Your monthly payment amount will be withdrawn on your due date (usually the 1st day of every month) or up to 4 days after your due date. The withdrawal amount will equal the total monthly payment due, including principal, interest, applicable tax and insurance payments. [ ] Due date [ ] 1 day after [ ] 2 days after [ ] 3 days after [ ] 4 days after

## 2. Specify additional principal to be withdrawn (optional)

You can choose to add an additional amount to each electronic withdrawal to be applied to your outstanding loan principal.

Yes, please add $_____to each of my automatic electronic withdrawals.

## 3. Supply your account information (do not include voided check)

Account type: [ ] Checking    [ ] Savings

Customer bank routing number: _____    Customer bank account number: _____
(9-digit number at the bottom left of your check)    (To the right of the bank routing number on your check)

## 4. Signature

By signing below, I agree to the Terms and Conditions on the preceding page and online at wellsfargo.com/preferred terms.

Customer name (print): _____    Customer phone number: _____

Customer loan number: _____    Property address: _____

Customer signature: _____    Date signed: _____

NOTE: A newly signed form is required if the Preferred Payment Plan is not set-up within 120 days of initial signing of the form.

1. Excess Activity Fees may apply if you exceed these federally-mandated transaction limits for savings accounts: Three withdrawals in a month by check, draft, point-of-sale purchase, check card, or other similar withdrawal payable to a third party. A total of six transfers and/or withdrawals in a month including: those listed above, pre-authorized or automatic transfers (including overdraft protection transfers and payment to third parties), and transfers made online or by telephone.



Wells Fargo Home Mortgage is a division of Wells Fargo Bank, N.A.
© 2018 Wells Fargo Bank, N.A. All rights reserved. NMLSR ID 399801

For more information, please refer to your account agreement with your financial institution